IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**COREY TRAINOR, # B-51552,**
**and MICHAEL TURNER, # K-51650,**

**Plaintiffs,**

v.  No. 17-cv-00627-DRH

**LARRY GEBKE,**
**ROBERT C. MUELLER,**
**MONICA CHRISTIANSON,**
**and OFFICER ROVENSTEIN,**

**Defendants.**

# MEMORANDUM AND ORDER

**HERNDON, District Judge:**

This matter is now before the Court for a merits review of the Complaint (Doc. 30) pursuant to 28 U.S.C. § 1915A. Plaintiffs are currently incarcerated at Centralia Correctional Center ("Centralia"), and have brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming that Defendants violated their First Amendment rights by preventing them from receiving certain publications. Plaintiff Trainor also raises a retaliation claim.

Trainor filed the suit on June 14, 2017, naming himself and 5 other prisoners as co-Plaintiffs. Co-Plaintiff Turner later signed the Complaint and affirmed that he wishes to proceed with this joint action. Three other co-Plaintiffs voluntarily withdrew from the action, and one former co-Plaintiff was dismissed by the Court for failure to comply with a court order. (*See* Docs. 24, 31).

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual

allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of the claims survive threshold review under § 1915A. However, analysis of the remaining claims demonstrates that not all of the Defendants are properly joined in the same action. Accordingly, Trainor's retaliation claims against Christianson and Rovenstein shall be severed into a separate case.

## **The Complaint**

The Complaint begins with Trainor's allegations of retaliation and violation of his First Amendment rights to receive publications through the mail. Turner also alleges that a magazine was wrongfully withheld from him. The sections of the Complaint containing allegations pertinent to the dismissed co-Plaintiffs shall be disregarded and omitted from the following summary.

As background for the retaliation claim, Trainor alleges that he filed a grievance against Christianson (Mailroom Supervisor) for mishandling his mail. (Doc. 30, p. 4). Soon thereafter, Trainor's newspapers were delivered to offenders in other housing units instead of to him. He believes that Christianson engineered the mis-delivery of the newspapers in retaliation for his grievance against her. (Doc. 30, pp. 5, 12).

In August 2015, Trainor ordered a novel titled "Confessions of an Industry Chic," by Trumain McClure. (Doc. 30, p. 5). Trainor describes the book as a

fictional work about a "video vixen who gives insight on behind the scenes drama in the entertainment industry." *Id.* On September 1, 2015, Gebke (Chair of the Publication Review Committee) notified Trainor that this book was denied. When Trainor questioned Gebke, he said he had not read the book, but denied it because "It's that hip-hop crap, you don't need to fill your head with that." *Id.*

Next, Gebke rejected a magazine titled "Phat Puffs," which Trainor describes as a "non-nude, non-obscene" publication containing ads with African-American models wearing lingerie and bikinis. Gebke's stated reason for denying "Phat Puffs" was that it contained "sexually explicit content." *Id.* When Trainor questioned what about it was sexually explicit, Gebke said he could not have "big booty mags" because he "know[s] what you'll use them for." (Doc. 30, pp. 5-6).

In September 2016, a package of "non-nude" photographs which Trainor had ordered were delivered to Centralia's mailroom, and sent (apparently by Christianson) to Rovenstein (Internal Affairs) for review. (Doc. 30, pp. 6, 13). Rovenstein called Trainor in and said that the pictures were "inappropriate" because the subjects were "dressed in scantily clad clothes, it's classless." (Doc. 30, p. 6). Rovenstein offered Trainor 3 of the photos, and Trainor requested a shakedown slip to verify that the pictures would be confiscated.[1] This request "upset and annoyed" Rovenstein, so he told Trainor to leave his office, and the pictures would be sent back to the mailroom to be "shipped out." *Id.* Rovenstein

---

[1] Trainor's exhibits indicate that he asked to be allowed to have those photos that Rovenstein deemed acceptable, but was told that all the photos would be returned to the mailroom. The grievance response stated that if one item in an envelope was considered contraband, the entire contents would be withheld from the inmate. (Doc. 1-1, pp. 2-6).

sent the pictures back to Christianson. Christianson failed to respond to Trainor's request slips inquiring on the whereabouts of his photos.

Trainor filed a grievance to Warden Mueller over these incidents, which Mueller denied. Trainor alleges that Mueller consented to Gebke's "censorship policy," which primarily excludes publications by African-American authors and those featuring "big booty" women. (Doc. 30, pp. 6-7). Trainor contrasts the denial of his requested items with publications that were allowed into Centralia, including the June 2015 issue of "Maxim" magazine. That issue contained an article entitled "Running and Gunning," which glorifies "kills" by "elite forces," and another entitled "Deadliest Gangs" depicting weapons, drugs, and dead bodies. (Doc. 30, p. 7). Also permitted are magazines such as "Playboy," "Vanity Fair," "Cosmopolitan," "Rolling Stone," and fitness and motorcycle magazines containing ads that reveal portions of female buttocks or breasts. (Doc. 30, p. 8).

On August 24, 2016, Turner was told by Christianson that his "Rotowire Fantasy Football" magazine had been sent to Gebke for review. (Doc. 30, p. 8). Turner had been receiving this publication for years without incident. Christianson did not inform Turner of the reason why the magazine had been sent for review, which violated the Illinois Administrative Code. (Doc. 30, p. 9).

On September 1, 2016, Gebke denied Turner permission to have the "Rotowire" magazine, stating that its detailed information could be "used as an aid in gambling." *Id.* Turner had never been disciplined for gambling. In response to Turner's question about the policy, Gebke said that he allowed "Sports

Illustrated," and Turner should order that. Turner points out that "Sports Illustrated" does not include equivalent football coverage to his desired publication. Additionally, the Fantasy Football league is internet-based, and inmates do not have internet access to engage in gambling with that league.

Turner's grievance to Mueller over the magazine confiscation was denied. He claims that Gebke, with the "consent" of Mueller, has "established an excluded list of publications" based on "their biased and unorthodox views." (Doc. 30, p. 10).

Based on these facts, Plaintiffs articulate 3 claims. Count 1 asserts that Christianson and Rovenstein retaliated against Trainor because of his grievance "challenging their conduct." (Doc. 30, p. 13). Count 2 is a First Amendment claim against Gebke for banning publications which did not pose a security threat to the institution and for singling out certain publications for censorship based on his racial and cultural biases, with no rational relationship to security concerns. (Doc. 30, pp. 13-14). Count 3 is labeled "Supervisory Liability" against Mueller, for failing to correct the constitutional violations. (Doc. 30, p. 14).

Plaintiffs argue that the action should receive class certification, but have not filed a separate motion requesting the Court to rule on that matter. (Doc. 30, pp. 15-17).

Plaintiffs seek compensatory and punitive damages, as well as injunctive and declaratory relief. (Doc. 30, p. 18).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment retaliation claim against Christianson, for diverting Trainor's newspapers to other inmates and sending Trainor's photograph package to Internal Affairs, after Trainor filed a grievance against her;
>
> **Count 2:** First Amendment retaliation claim against Rovenstein, for refusing to release any of Trainor's photographs to him in September 2016, because Trainor requested Rovenstein to document the confiscation of the "inappropriate" photos;
>
> **Count 3:** First Amendment claim against Gebke and Mueller, for rejecting Trainor's book and magazine in August 2015, and rejecting Turner's magazine in August 2016, where the rejection was not reasonably related to legitimate penological interests, and (as to Trainor's material) was based on racially and culturally biased criteria;
>
> **Count 4:** Claim against Christianson for violating the Illinois Administrative Code by failing to inform Turner of the reason his magazine was sent to Gebke for review in August 2016.

Counts 1, 2, and 3 survive threshold review under § 1915A. Count 4 fails to state a constitutional claim upon which relief may be granted and shall be dismissed. Further, the surviving claims against Christianson and Rovenstein shall be severed into a separate action pursuant to Federal Rules of Civil

Procedure 20 and 21.

### Count 1 – Retaliation – Christianson

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted) (reversing district court's § 1915A dismissal because inmate's allegations established that "the exercise of his [First Amendment] right was closely followed by the retaliatory act").

In this case, Trainor alleges that he filed a grievance against Christianson for mishandling his mail items. He does not specify when that grievance was filed, but asserts that soon after he submitted the grievance, Christianson began diverting his newspapers to other inmates in different housing units. This chronology arguably presents a colorable claim of retaliation by Christianson against Trainor for his complaint against her. Accordingly, this portion of the retaliation claim survives review under § 1915A.

The other incident in which Christianson played a part was in September 2016, when Trainor's incoming order of photographs was forwarded from the mailroom to Internal Affairs, where Rovenstein reviewed and eventually

confiscated them. Trainor implies that Christianson sent the photos to Internal Affairs. (Doc. 30, p. 13). Rovenstein later sent them back to Christianson's mailroom, and she failed to respond to Trainor's inquiry as to what became of the photos.

It is not clear whether Christianson's handling of the photographs was motivated by a desire to retaliate against Trainor, or whether she handled the package in the same way as she would have treated any other similar material. If her actions were taken in retaliation for the grievance, then the incident can support a § 1983 claim. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper."). At this early stage, both portions of Trainor's retaliation claim in **Count 1** merit further review against Christianson.

### Count 2 – Retaliation – Rovenstein

Trainor also characterizes his claim against Rovenstein as a retaliation claim. (Doc. 30, p. 13). He states that Rovenstein (and Christianson) "retaliated" by "delaying his pictures mailed to him because [Trainor] filed a grievance challenging their conduct." *Id.* Rovenstein allegedly refused to issue Trainor a shakedown slip or give him any of the pictures because Trainor "wanted proof that they were being confiscated." *Id.* This incident occurred in September 2016.

The Complaint does not identify any grievance that Trainor filed against

Rovenstein that might have motivated him to confiscate the pictures. The Complaint thus does not support a retaliation claim based on grievance activity. However, Trainor's request for documentation from Rovenstein regarding the "inappropriate" photos could be considered a protected complaint regarding Trainor's conditions of confinement. If so, then Trainor's assertion that Rovenstein refused to give Trainor the non-objectionable photos in retaliation for Trainor's request for a shakedown slip states a cognizable claim for retaliation at this early stage of the case. *See Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009) (to state a retaliation claim, plaintiff must have experienced an adverse action that would likely deter future First Amendment activity, and the plaintiff's First Amendment activity must have been "a motivating factor" for the defendant to take the retaliatory action).

At this juncture, Trainor's retaliation claim in **Count 2** against Rovenstein survives § 1915A review.

### Count 3 – Rejection of Publications

Trainor and Turner together assert this First Amendment claim against Gebke, who rejected Trainor's "Confessions of an Industry Chic" novel in September 2015, denied Trainor's "Phat Puffs" magazine soon after that, and rejected Turner's "Rotowire Fantasy Football" magazine in September 2016. Trainor's publications were rejected because Gebke ruled they contained sexually explicit content. Gebke denied Turner's football magazine, despite the fact that this same publication had previously been allowed into the prison for years,

because he said it could be used for gambling. The common issue between Turner's and Trainor's claims is whether Gebke properly rejected these publications based on legitimate penological interests (such as maintaining prison safety or security), or whether the restriction of these reading materials violated Plaintiffs' First Amendment rights.

The freedom of speech protected by the First Amendment is not merely freedom to speak; it is also freedom to read. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (citing *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Lamont v. Postmaster General*, 381 U.S. 301, 306-07 (1965)). While inmates do not lose their constitutional rights upon being confined in prison, some restrictions on those rights may properly be imposed by prison authorities. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. On the other hand, "the arbitrary denial of access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988)).

*Turner* outlined four factors which courts must consider in evaluating whether a regulation restricting prisoners' rights is sufficiently reasonably related to legitimate penological interests to withstand constitutional scrutiny: "(1) the validity and rationality of the connection between a legitimate and neutral

government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91).

In this case, the withholding of Trainor's and Turner's reading materials would run afoul of the First Amendment if the reasons for refusing access to those publications do not hold up to analysis under the *Turner* reasonableness factors. Trainor argues that other magazines containing images of female models that are similar to those found in "Phat Puffs" are currently allowed at Centralia, which suggests that the screening criteria were inconsistently applied to reject Trainor's magazine. Moreover, Gebke's comments and the fact that magazines such as "Playboy" are permitted indicate that Gebke's rejection of Trainor's material was rooted in racial and cultural bias. The Complaint also gives examples of permitted magazines that include depictions of violence. Turner argues that Gebke arbitrarily rejected his "Fantasy Football" magazine when he had been permitted to receive it for years before the September 2016 restriction.

Further factual development will be required in order to determine whether the denial of Trainor's and Turner's publications violated their First Amendment rights. At this stage, the claims against Gebke in **Count 3** merit additional consideration.

In the Complaint, Plaintiffs seek to impose liability on Mueller on the theory of supervisory liability. (Doc. 30, p. 14). The mere fact that Warden Mueller supervised Gebke and could have reversed his decisions by ruling in favor of either Plaintiff in the grievance process is not sufficient to state a claim against him. The doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). A defendant must have been "personally responsible for the deprivation of a constitutional right" in order to be held liable in a civil rights case. *Id.*

In their narrative, however, Plaintiffs claim that Gebke established a list of banned publications and categories of materials, with the consent of Mueller (Doc. 30, pp. 7, 10). If Mueller knew about and approved Gebke's system for screening published materials, and/or condoned Gebke's conduct, Mueller may be held liable on that basis. Where a defendant has been alleged to have directed the conduct or to have given knowing consent to the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."); *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000). On this basis, Plaintiffs may also proceed with the First Amendment claim against Mueller in **Count 3.**

**Dismissal of Count 4 – Noncompliance with Illinois Administrative Code**

Although Turner did not articulate a claim against Christianson in the Complaint's listing of claims (Doc. 30, pp. 13-14), he alleges that her notice informing him of the "Rotowire" football magazine's referral to Gebke for review was defective. Rather than leave Turner's implied claim in doubt, the Court deems it expedient to address the matter. Christianson's notice did not state the reason why she chose to send the magazine to the Publications Review Board for approval. Turner points out that the Illinois Administrative Code (20 Ill. Admin. Code 525.230(c)) requires such a notice to "include an explanation why the publication is deemed to contain unacceptable material." (Doc. 30, p. 9).

Even if Christianson's notice failed to comply with the requirements of the Illinois Administrative Code, that does not provide grounds for a civil rights claim against her pursuant to 42 U.S.C. §1983. A federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). **Count 4** shall therefore be dismissed from the action with prejudice.

### Severance of Parties

In addition to conducting a merits review under § 1915A, the Court must consider whether the surviving claims and parties may properly proceed in the same joint action, in consideration of Federal Rule of Civil Procedure 20. Looking

first at the Defendants and Rule 20(a)(2),[2] Plaintiffs' Complaint articulates retaliation claims (labeled in the Complaint as Count 1) only against Christianson and Rovenstein, for 2 incidents involving Trainor's newspapers and photos. Trainor and Turner bring claims (labeled in the Complaint as Count 2) against Gebke for wrongly denying their First Amendment right to receive magazines and a book, and they seek to impose liability on Mueller for approving Gebke's censorship policy.

Under Rule 20(a)(2), a "plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2). Here, the retaliation claims against Christianson and Rovenstein did not arise from the same transaction or occurrence, or series of transactions or occurrences, as the First Amendment claims against Gebke and Mueller. Additionally, there is no common question of law or fact that allows the Christianson/Rovenstein claims to remain in the same action as the Gebke/Mueller claims. The legal standards applicable to the retaliation claims are not the same as those involved in the claims over denial of access to reading materials. The factual questions regarding the claims against Christianson and Rovenstein are also distinct from the factual questions involving

---

[2] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017).

Gebke and Mueller. For these reasons, Christianson and Rovenstein are not properly joined in the same action with Gebke and Mueller.

To resolve this improper joinder of Defendants, the Court will sever the claims against Christianson and Rovenstein (Counts 1 and 2) into a separate action. *See* FED. R. CIV. P. 21 (the Court may sever misjoined parties rather than dismiss the action). Because Turner's claim against Christianson in Count 4 shall be dismissed, the newly severed case shall include only Trainor as a Plaintiff. The claims against Gebke and Mueller brought jointly by Trainor and Turner (Count 3) shall continue in this action.

The Clerk shall be directed to open a new case with a newly-assigned case number for Trainor's retaliation claims against Christianson and Rovenstein, for which a new filing fee shall be assessed.

## Disposition

**COUNT 4** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS HEREBY ORDERED** that, pursuant to Federal Rule of Civil Procedure 20(a)(2), Trainor's retaliation claims (**COUNTS 1 and 2**) against **CHRISTIANSON** and **ROVENSTEIN**, which are unrelated to the claims against Gebke and Mueller in Count 3 for rejection of publications in violation of the First Amendment, are **SEVERED** into a new case. That new case shall be: Claims by **TRAINOR** against **CHRISTIANSON** and **ROVENSTEIN** for retaliation (Counts 1 and 2 herein).

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Original Complaint (Doc. 30) and Trainor's Exhibits (Doc. 1-1)
(3) Trainor's motion to proceed *in forma pauperis* (Doc. 2)
(4) The Memorandum and Order at Doc. 13
(5) The Memorandum and Order at Doc. 24

Trainor **will be responsible for an additional $350.00 filing fee** in the new case. Because this Memorandum and Order contains the §1915A merits review of Counts 1 and 2, service may be ordered without delay on Defendants Christianson and Rovenstein as soon as the new case is opened and a judge assignment is made.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 3 against Defendants GEBKE and MUELLER*, for rejecting Trainor's and Turner's publications in violation of the First Amendment. This case shall now be captioned as: **COREY TRAINOR and MICHAEL TURNER, Plaintiffs, vs. LARRY GEBKE and ROBERT C. MUELLER, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **CHRISTIANSON and ROVENSTEIN** are **TERMINATED** from *this* action with prejudice.

As to **COUNT 3**, which remains in the instant case, the Clerk of Court shall prepare for Defendants **GEBKE** and **MUELLER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 30), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the

Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiffs, and the judgment includes the payment of costs under § 1915, Plaintiffs will be required to pay the full amount of the costs, notwithstanding that their applications to proceed *in forma pauperis*

have been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiffs are **ADVISED** that they are under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in address; the Court will not independently investigate a Plaintiff's whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**
Signed this 27th day of October, 2017.

Digitally signed by
Judge David R. Herndon
Date: 2017.10.27
12:41:17 -05'00'

**UNITED STATES DISTRICT JUDGE**